CHARLES  J.  WITHERSTINE,  Respondent,  *v.*  THE EMPLOYERS'  LIABILITY  ASSURANCE  CORPORATION, LIMITED, OF LONDON, ENGLAND, Appellant.

**Insurance — motor vehicles — meaning of word "operate" in connection therewith.**

1. In connection with the use of motor vehicles the word " operate " signifies a personal act in working the mechanism of the car.

2. Where a policy of automobile liability insurance covered injury to third persons or their property while the car was being " operated by the owner for private purposes only," and in an action to recover for personal injuries and injury to property arising from a collision it appeared that at the time of the accident the car of the insured was being actually driven by another though the insured was directing him as to when, where and how fast to drive the car, the policy did not cover the loss sustained.

*Witherstine* v. *Employers' Liability Assurance Corp.*, 200 App. Div. 854, reversed.

(Argued January 23, 1923; decided March 6, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 27, 1921, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Charles V. Byrne* for appellant. The appellant had the right to limit the coverage of its policy in such manner as it wished. (*Houlihan* v. *P. A. Ins. Co.*, 196 N. Y. 337.) The contract should be fairly construed to effect the purpose and intent of the parties as expressed in the indorsement and as appears from the position each of them occupied when it was made. (*Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142; *Rosenthal* v. *Am. Bonding Co.*, 207 N. Y. 162.) The word " operated," as it is used in the clause in question, means and is designed to mean precisely the same as the word " driven." (*Wolcott* v.

*Renault,* 175 App. Div. 858; *Van Blaricom* v. *Dodgson,*
220 N. Y. 111; *Willie* v. *Luczka,* 193 App. Div. 826;
*McNamara* v. *Leipzig,* 227 N. Y. 291; *Fallon* v. *Swackhamer,* 226 N. Y. 444; *Duffy* v. *Ascher,* 191 App. Div.
918; *Seiden* v. *Reimer,* 190 App. Div. 713; *Anderson* v.
*Schorn,* 189 App. Div. 495.)

*Merwin W. Lay* for respondent. The provisions of
the policy must be liberally construed in favor of the
insured and where words are, without violence, susceptible of two interpretations, that which will sustain
the insured's claim and cover the loss must be adopted.
(*White* v. *Hoyt,* 73 N. Y. 505; *Moran* v. *Standard Oil Co.,*
211 N. Y. 187; *Nellis* v. *Western Life Indemnity Co.,* 207
N. Y. 320; *Schumacher* v. *G. E. C. & I. Co.,* 197 N. Y.
58; *Rickerson* v. *H. F. I. Co.,* 149 N. Y. 307; *Gillet* v.
*Bank of America,* 160 N. Y. 549.) The contract must be
construed according to the plain and ordinary meaning
which the parties have employed, and not according to
the intent or purpose of the user. (*Hoffman* v. *Ætna
Ins. Co.,* 32 N. Y. 405; *Rickerson* v. *Hartford Ins. Co.,* 149
N. Y. 307.) At the time of the accident the automobile
covered by the policy was " being operated by Charles
Dunn " within the terms of the policy. (*Van Rensselaer*
v. *Chism,* 186 App. Div. 557; 231 N. Y. 567; *Seiden* v.
*Reimer,* 190 App. Div. 713, 714; 232 N. Y. 593; *Utterback-
Gleason Co.* v. *Standard Accident Co.,* 193 App. Div. 646;
233 N. Y. 549; *Clark* v. *Buckmobile Co.,* 107 App. Div.
120; *Gallenkamp* v. *Garvin Machine Co.,* 91 App. Div. 141,
144; *O'Leary* v. *Buffalo Union Furnace Co.,* 100 App. Div.
136; *Piper* v. *N. Y. State Railways,* 185 App. Div. 184;
*La Rose* v. *Shaughnessy Ice Co.,* 197 App. Div. 821;
*Glatzel* v. *Stumpp,* 220 N. Y. 71; *Matter of Costello* v.
*Taylor,* 217 N. Y. 179.)

Pound, J. This is an action to recover upon a policy
of automobile liability insurance issued to Charles Dunn,

which provides that in case the assured becomes insolvent a person injured by him may maintain an action thereon, subject to its terms. On the 27th of July, 1919, Dunn's car, occupied by himself, his wife, two small children and a friend, Albert Ridell, collided with an automobile owned and operated by the plaintiff Witherstine. Witherstine brought an action against Dunn and Ridell to recover damages for his personal injuries and the injury to his car, and obtained a verdict of $4,500 against both defendants. The appellant insurance company had notice of the commencement of the action and was requested to defend, but declined to do so on the ground that the damages were not covered by the terms of the policy. Judgment was entered and execution returned unsatisfied.

This action was then commenced. Plaintiff introduced in evidence the judgment roll, execution referred to, and testimony that the judgment had not been paid. Proof was offered that the policy was issued to Dunn by the insurance company, that it was in effect at the time of the accident, that it was written to cover the car owned by Dunn which concededly was the car involved in the accident, and the policy was put in evidence. On the day the accident occurred Ridell was driving the car and Dunn was directing him when, where and how fast to drive the car. This was substantially the plaintiff's case, except that both Dunn and Ridell testified that at the time the execution was issued they had no property on which it could be levied. At the conclusion of the trial the court directed a verdict in favor of the plaintiff for the amount claimed. The defendant made a motion for a nonsuit and also for the direction of a verdict, and took an exception to the refusal of the court to grant either. The judgment of the trial court was unanimously affirmed by the Appellate Division.

The only question which the insurance company seeks to raise is as to the proper construction of a clause or rider attached to the body of the policy which reads:

" The EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, OF LONDON, ENGLAND.

" AUTOMOBILE ENDORSEMENT: (Form 2345).
" (Private Cover Only: Owner Operating)
" Dated, *July* 1*st*, 1919.

" In consideration of the reduced premium at which this policy is written, it is stated by the assured (which statement is accepted by the Corporation as true) that the automobiles described therein are and will be used *only for private purposes.* Private purposes shall include personal pleasure and family use, excluding the regular and frequent use for business or professional calls and excluding commercial delivery. It is further agreed that *this Policy shall apply only while the said automobiles are being operated by CHARLES DUNN (who is the owner* and the named Assured), or while the automobiles are being *operated by a person connected with* a repair shop or garage in connection with repair work, testing, delivering or calling for said automobiles."

Upon the trial it was conceded that at the time of the accident the car was not being operated by a person connected with a repair shop or garage, in connection with repair work, testing, delivering or calling for said automobile. The real question, therefore, is what is the proper meaning to be given to the words " operated by owner for private purposes only " as used in the clause quoted. The contention of the appellant is that this clause is what is known as a " one-driver " clause of the policy; that the policy is issued at a reduced rate by reason of the fact that the car is to be operated only by the owner. The contention of the respondent is that Dunn, the owner, was operating the car when he was exercising control over Ridell, the driver.

The word " operate," standing alone, doubtless has more than one meaning. A surgeon operates when he amputates a patient's leg; a railroad company operates

its railroad (*Escher* v. *B. & L. E. Traction Co.*, 220 N. Y. 243); the Workmen's Compensation Law (Cons. Laws, ch. 67) provides compensation for injuries sustained by employees of those who are engaged in the business of operating vehicles on the street (*Matter of Costello* v. *Taylor*, 217 N. Y. 179); under the Labor Law (Cons. Laws, ch. 31) the words, " to operate a machine " mean " to regulate and control its management or operation." (INGRAHAM, J., in *Gallenkamp* v. *Garvin Mach. Co.*, 91 App. Div. 141; reversed on his dissenting opinion, 179 N. Y. 588.)

In connection with the use of motor vehicles, the word " operate " seems to have acquired a definite meaning. The Highway Law (Cons. Laws, ch. 25), section 281, provides: " the term ' chauffeur ' shall mean any person *operating or driving a* motor vehicle as an employee or for hire. The term ' operator ' shall mean any person, other than a chauffeur, who operates a motor vehicle." Section 282, subdivision 2, provides: " No person shall operate or drive a motor vehicle who is under eighteen years of age unless such person is accompanied by a duly licensed chauffeur or the owner of the motor vehicle being operated." Section 286 provides that the person operating a motor vehicle shall comply with the rules of the road. Section 287 provides that a person operating a motor vehicle shall drive in a careful and prudent manner; and finally section 290, subdivision 3, provides: " whoever operates a motor vehicle while in an intoxicated condition shall be guilty of a misdemeanor." The word " operate " is used throughout the statute as signifying a personal act in working the mechanism of the car. The driver operates the car for the owner, but the owner does not operate the car unless he drives it himself. If the meaning were extended to include an owner acting either by himself or by agents or employees, the provisions of the Highway Law would be replete with repetitious jargon.

Obviously the word is used in the policy in the same

sense in which it is used in the Highway Law. Otherwise it is inexplicable why the policy should refer to owner operating for private purposes only, or to operation by a person connected with a repair shop or garage, etc. The entire indorsement on the policy should, if possible, be given a meaning and a consistent meaning. Words may in themselves be ambiguous yet have a clear meaning when read in the light the context affords. When the meaning of the contract appears, it is the duty of the court to make it effective even when the words have been selected by an insurance company. (*Hartigan* v. *Casualty Co.*, 227 N. Y. 175, 179.) Construction must not extend to the creation of a new contract for the parties. (*Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142; *Houlihan* v. *Preferred Accident Insurance Co.*, 196 N. Y. 337, 340.) It follows that the owner was not operating the car at the time of the accident and that the policy did not cover the loss sustained. Dunn was under no obligation to insure for the benefit of those whom he might injure and they are protected by the policy only to the extent that he saw fit to protect himself.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

McLAUGHLIN, J. (dissenting). I dissent. One of the common and ordinary meanings of the word " operate " is " to direct or superintend the working of." (Century Dictionary.) The defendant prepared the policy and used this word. Therefore, its use should be given the broadest meaning in favor of the plaintiff. The prevailing opinion proceeds upon the theory that it is used in a restricted sense. The meaning thus ascribed to it I think too narrow, and for that reason I vote to affirm.

HISCOCK, Ch. J., HOGAN and CARDOZO, JJ., concur with POUND, J., for reversal and dismissal of complaint; McLAUGHLIN, J., reads dissenting memorandum in which CRANE, J., concurs; ANDREWS, J., absent.

Judgments reversed, etc.